# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

SCOTT MATHIESON and
TRUDY MATHIESON, and all others
similarly situated,

      Plaintiffs,

v.                                CASE NO. 8:20-cv-2728-WFJ-SPF

WELLS FARGO BANK, NA,
as Trustee for the Pooling and Servicing
Agreement Dated as of June 1, 2006
Securitized Asset Backed Receivables
LLC Trust 2006-FR2 Mortgage
Pass-Through Certificates, Series 2006-FR2;
PHH MORTGAGE CORPORATION; and
ROBERTSON, ANSCHUTZ & SCHNEID, PL,

      Defendants.
_____/

## <u>ORDER</u>

Before the Court is the motion to dismiss the amended complaint filed by

Wells Fargo Bank, NA, *etc*. ("Wells Fargo")[1] and PHH Mortgage Corporation

("PHH") (Dkt. 31), and Plaintiff's response (Dkt. 32).[2]  After careful review of the

---

[1] Defendant Wells Fargo is a statutory trust that regularly forecloses on mortgage interests in real property.  Dkt. 24 ¶ 3.  Wells Fargo notes that it is not an LLC.  Dkt. 31 at n.1; *see also* Dkt. 24-1 at 2.

[2] Defendant Robertson, Anschutz & Schneid, PL settled with Plaintiffs and was dismissed with prejudice.  Dkts. 19, 21, 26, 27.

allegations of the amended complaint (Dkt. 24), the submissions of the parties, and the applicable law, the Court grants the motion.

## BACKGROUND

In this removed action based on federal question jurisdiction, Plaintiffs sue Defendant PHH for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, and all Defendants for the same violations under the Florida Consumer Collection Practices Act("FCCPA"), Fla. Stat. § 559 *et seq.*  The claims arise from conduct and communications surrounding the foreclosure and sale of Plaintiffs' Pasco County home.  Dkts. 24, 24-3 (state foreclosure complaint).  Plaintiffs allege that during the parallel and ongoing loss mitigation process, PHH as the loan servicer conditionally approved Plaintiffs for either a short sale or a deed-in-lieu of foreclosure.  PHH gave Plaintiffs a deadline for submitting additional required information, but the date fell one week after the scheduled foreclosure sale.  Despite Wells Fargo's efforts to halt the impending sale, the state court denied its motion to cancel the sale, and the sale proceeded as scheduled.

Defendants raise three grounds in support of dismissal with prejudice.  First, Defendants state Plaintiffs fail to allege any covered communication or conduct in connection with a debt.  Second, Defendants assert they are not debt collectors.  Third, Defendants argue neither PHH nor Wells Fargo was engaged in conduct

prohibited by the FDCPA or FCCPA.  Defendants assert the additional grounds of Florida's litigation privilege, collateral estoppel, and res judicata, all directed to the FCCPA claim.

## DISCUSSION

The Court applies the *Twombly-Iqbal* standard to the allegations of the amended complaint, accepting all of its factual allegations, not legal conclusions, as true and construed in the light most favorable to Plaintiffs.[3]  To allege a claim under the FDCPA, the factual allegations must show that 1) the defendant is a debt collector, and 2) "the challenged conduct is related to debt collection."  *Alhassid v. Nationstar Mortg. LLC*, 771 F. App'x 965, 968 (quoting *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1216 (11th Cir. 2012)).[4]  Documents attached to the complaint may be considered as part of the pleadings in ruling on a motion to dismiss.  *Reese,* 678 F.3d at 1215–16; *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205 (11th Cir. 2007).  Other documents may also be considered if they are central to or referenced in the complaint, or judicially noticed.  *LaGrasta v.*

---

[3] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) (requiring complaint be "plausible on its face"); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (allowing reasonable inferences to be drawn from factual content); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (stating legal conclusions "couched" as facts need not be accepted as true); *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003) (same).

[4] In the context of proof for an FDCPA claim, a plaintiff must establish 1) the plaintiff was the object of collection activity arising from consumer debt, 2) the defendant is a debt collector, and 3) the defendant engaged in prohibited acts or omissions.  *Goodin v. Bank of Am., N.A.*, 114 F. Supp. 3d 1197, 1204 (M.D. Fla. 2015) (citation omitted).

*First Union Sec., Inc*., 358 F.3d 840, 845 (11th Cir. 2004) (citing Fed. R. Civ. P. 10(c)); *Wright v. AR Res., Inc*., No. 8:20-cv- 985-VMC-CPT, 2020 WL 4428477, at \*2 (M.D. Fla. July 31, 2020) (relying on exhibits to dismiss complaint for violations of FDCPA).

The following timeline is important to understanding the claims.  Plaintiffs defaulted on their note and mortgage sometime around April or May 2016, which was not long after the loan was modified.  Dkt. 24-3 at 3 ¶¶ 8, 10, and at 39.  In April 2017, Wells Fargo filed a state foreclosure suit.  Dkt. 24-3.  Final judgment of foreclosure was entered in August 2019.  The original sale date was rescheduled to March 3, 2020.  Dkt. 24 ¶¶ 13, 14.

Less than one month before the sale, on February 10, 2020, PHH wrote to Plaintiffs conditionally approving them for a short sale or deed-in-lieu.  Dkt. 24-2.  The February 10 correspondence set March 11, 2020---just eight days after the scheduled sale---as the deadline for Plaintiffs to submit required documents.  *Id*. at 5.  On February 25, 2020, Wells Fargo filed a motion to cancel the sale and attached an affidavit in support signed by PHH as the loan servicer.  Dkts. 30-2 (motion), 24-1 (affidavit).  On February 28, 2020, the state circuit court denied Wells Fargo's motion.  Dkt. 24 ¶ 13.  On March 3, 2020, the property was sold at the advertised sale.  *Id*. ¶¶ 13, 14.

**Covered Communications and Conduct**[5]

The FDCPA forbids debt collectors from "making false or misleading representations and from engaging in abusive and unfair practices in connection with the collection of any debt." *Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291, 1297 (11th Cir. 2015) (citing 15 U.S.C. § 1692d as to harassment or abuse, § 1692e as to false or misleading representations, and § 1692f as to unfair practices). A covered communication or act must involve or "be related to" debt collection to fulfill the statutory mandate of "in connection with the collection of any debt." *Cilien v. U.S. Bank Nat'l Assoc.*, 687 F. App'x 789, 792 (11th Cir. 2017) (citing *Reese*). The communication or act must also be harassing or abusive, unfair, or, as alleged by Plaintiffs, a false or misleading "threat." Dkt. 24 ¶ 35, citing 15 U.S.C. § 1692e(5).

Each alleged communication, act, or failure to act must be clearly identified to determine whether it is connected with debt collection and if so, whether it constitutes prohibited activity. In their response, Plaintiffs claim that the communications and acts covered by the FDCPA are alleged in specific paragraphs of and exhibits to the amended complaint and "were conveying information

---

[5] The FDCPA and FCCPA claims will be analyzed together because they contain substantially similar provisions. *Oppenheim v. I.C. Sys., Inc.*, 627 F.3d 833, 839 (11th Cir. 2010) (holding claims under FDCPA and FCCPA may be analyzed together based on substantially similar provisions).

regarding the loan," and therefore fall under the FDCPA.  Dkt. 32 at 4–5.

Plaintiffs point to paragraphs 7, 8, and 13.

Paragraph 7 references the February 10 written communication from PHH to

Plaintiff Scott Mathieson, which is attached to the amended complaint.  Dkt. 24 ¶

7; Dkt. 24-2.[6]  The February 10 communication "conditionally approved" Plaintiffs

"for a short sale or a deed-in-lieu of foreclosure."  *Id*.  Paragraph 8 alleges the

February 10 letter gave them "until March 11, 2020 to send an executed listing

agreement, an executed purchase contract, proof of funds or a pre-approval letter,

and a preliminary closing disclosure."  Dkt. 24 ¶ 8.  This allegation is substantiated

by both PHH's affidavit and the February 10 document.  Dkts. 24-1 (affidavit), 24-

2 at 5 (2/10/2020 letter stating "[y]ou must send the documents listed below to us

by 03/11/2020").  Finally, paragraph 13 alleges "[d]espite acknowledgement of a

pending loss mitigation review, no renewed request [after denial of the motion]

was made ahead of the March 3rd sale. No appeal was taken of the Order [denying

motion] and no request to rehear this motion was made."  Dkt. 24 ¶ 13.

All alleged communications and conduct will be addressed in turn: the

mitigation loss letter; the affidavit of PHH; Wells Fargo's motion to cancel sale;

the conduct surrounding the attempt to cancel the foreclosure sale; and the conduct

---

[6] Contrary to Plaintiffs' allegation, the letter is attached as Exhibit B, not as Exhibit A.  Dkts. 24-1, 24-2.  Exhibit A is the affidavit of PHH that was attached to Wells Fargo's motion to cancel sale.  Dkt. 24-1.

following the denial of the motion.  The Court applies the objective "least-sophisticated consumer" test to both claims.  *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010) (stating the standard as protecting the vulnerable while preventing liability for idiosyncratic interpretations of collection notices).  In determining whether a communication was sent in connection with debt collection, the Court considers whether it expressly demands payment, threatens consequences if the debtor fails to pay, or discusses the specifics of the underlying debt and whether the communication was sent in response to an inquiry or request by the debtor, as part of a strategy to make payment more likely, or as information to set forth alternatives to foreclosure.  *See Daley v. Bono*, 420 F. Supp. 3d 1247, 1257–58 (M.D. Fla. 2019); *Dyer v. Select Portfolio Servicing, Inc.*, 108 F. Supp. 3d 1278, 1280–82 (M.D. Fla. 2015) (gathering cases discussing the various factors).

### *February 10 Loss Mitigation Letter*

PHH titled the February 10 letter "Decision on the Request for Mortgage Assistance."  Dkt. 24-2 at 1.  The letter further indicates it was issued in response to Plaintiffs' request: "Thank you for the request for mortgage assistance . . . the account is conditionally eligible for other alternative(s) to foreclosure . . . ."  *Id*.  PHH posed the alternatives of a short sale or deed-in-lieu, with a March 11

deadline for submitting additional documents for a short sale.  *Id*. at 5.  At the

bottom of each of the nine pages of the letter appears the following:

> This communication is from a debt collector attempting to collect a
> debt; any information obtained will be used for that purpose. However,
> if the debt is in active bankruptcy or has been discharged through
> bankruptcy, this communication is purely provided to you for
> informational purposes only with regard to our secured lien on the
> above-referenced property. It is not intended as an attempt to collect a
> debt from you personally. As may be required by state law, you are
> hereby notified that a negative credit report reflecting on an
> accountholder's credit record may be submitted to a credit reporting
> agency if credit obligations are not fulfilled.

Dkt. 24-2.  This language, often referred to as a "mini *Miranda*" warning, is not

determinative of whether the letter is related to the collection of the debt.  *Hart v.*

*Credit Control, LLC*, 871 F.3d 1255, 1258 n.1 (11th Cir. 2017).

The Eleventh Circuit adopted the Second Circuit's reasoning "that if a

communication conveys information about a debt and its aim is at least in part to

induce the debtor to pay, it falls within the scope of the [FDCPA]."  *Caceres v.*

*McCalla Raymer, LLC*, 755 F.3d 1299, 1302 (11th Cir. 2014) (citing *Reese*, 678

F.3d at 1218).  A loss mitigation letter, however, is not necessarily a debt

collection communication.  *See Farquharson v. Citibank, N.A.*, 664 F. App'x 793,

801 n.6 (11th Cir. 2016) (holding letter not related to debt collection because it

neither demanded payment nor discussed additional fees if payment not tendered),

*cert. denied*, 137 S. Ct. 2303 (2017); *France v. Ditech Fin., LLC*, No. 8:17-cv-

3038-SCB-MAP, 2018 WL 1695405, at *7 (M.D. Fla. Apr. 6, 2018) (citing

*Farquharson*).  If the loss mitigation letter demands payment and discusses additional fees if payment is not made, the letter may be characterized as debt collection activity.  *Reese*, 678 F.3d at 1218; *Foster v. Green Tree Serv., LLC*, No. 8:15-cv-1878-JDW-MAP, 2017 WL 5151354, at *6 (M.D. Fla. Nov. 3, 2017) (distinguishing letter in *Farquharson* and finding purpose of loss mitigation letter was to induce debtor to contact lender to "find a solution" for the default by making payment).

Undoubtedly, the language of the February 10 letter, save the statement in the footers, reveals that it was not an attempt to collect a debt.  The letter does not demand payment or threaten consequences if payment is not made.  The letter responds to inquiry from the Plaintiffs-debtors.  Where the alleged debt collector merely communicates to provide information to questions posed by the debtor, the animating purpose is not to induce payment by the debtor.  *See Goodson v. Bank of Am., N.A.*, 600 F. App'x 422, 432 (6th Cir. 2015) (holding animating purpose of ministerial response to debtor's inquiry was not to induce payment); *Grden v. & Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011) (same).[7]

---

[7] Plaintiffs further contend in their response that the letter constitutes an offensive action in that it "led Plaintiffs to believe . . . that they had a sufficient amount of time to try to avoid the consequences of the foreclosure judgment." Dkt. 32 at 7.  The letter, however, merely states a certain date, which happened to fall after the sale date.  The letter makes no mention of the sale and makes no mention of attempting, much less promising, to stop the sale.

This brings us to the only language that can conceivably convert the February 10 letter to one attempting to collect a debt: "This communication is from a debt collector attempting to collect a debt . . . ." Dkt. 24-2. While this statement gives pause, the Court finds the letter does not attempt to collect a debt.

The factual allegations in this case are distinguishable from both *Reese* and *Farquharson*. In *Reese*, the letter from the lender stated it was an attempt to collect a debt, demanded full and immediate payment, and threatened attorneys' fees would be added if payment not made. *Id*. The letter was found to both relate to the enforcement of a security interest and to the collection of a debt. Unlike the letter in *Reese*, the February 10 letter does not demand payment or threaten additional charges if payment not made.

In *Farquharson*, after the bank identified itself as a debt collector, it stated its purpose was to inform the borrowers of their eligibility for a loan modification program to keep their loan current. *Id*. at 802. Unlike the letter in *Farquharson*, the February 10 letter does not modify the statement that PHH is a debt collector attempting to collect a letter. The letter does not contain conditional language juxtaposed in the boilerplate, mini *Miranda* statement. The body of the February 10 letter, however, clearly states its intention to provide alternatives to losing the property at the foreclosure sale.[8]

---

[8] The foreclosure judgment had been entered almost six months prior to the February 10 letter.

10

The February 10 letter is more akin to the communication analyzed in *Alhassid*, which contained a similar statement. *Alhassid*, 771 F. App'x at 968. The writing there contained language that Nationstar "is a debt collector" and "this is an attempt to collect a debt." *Id.* The *Alhassid* court held the boilerplate statement was "not dispositive" of whether the writing was an attempt to collect a debt. *Id.* The specific information in the reverse mortgage account statement did not attempt to collect any debt, but rather was "purely informational, containing no explicit or implicit demand for payment," which the Eleventh Circuit concluded was not a basis for an FDCPA claim. *Id.*[9]

The Court finds that the least-sophisticated consumer, who is presumed to possess "a rudimentary amount of information about the world and a willingness to read a collection notice with some care," would not comprehend the February 10 letter as an attempt to collect a debt. *See Edstrom-Smith v. Kass Shuler, P.A.*, 680 F. App'x 813, 814 (11th Cir. 2017) (quoting *LeBlanc*, 601 F.3d at 1194). The loss mitigation letter is informational, providing alternatives to foreclosure. The foreclosure judgment had long been entered when the letter was sent, and the letter

---

[9] *See also Jones v. Select Portfolio Serv., Inc.*, No. 18-cv-20389, 2018 WL 2316636, at *4–5 (S.D. Fla. May 2, 2018) (finding language that communication was "attempt to collect a debt" and "all information obtained will be used for that purpose" was not determinative of whether communication was made in connection with attempt to collect a debt); *Goodson*, 600 F. App'x at 432 (holding disclaimer identifying communication as "attempt to collect a debt" does not automatically trigger FDCPA protections); *Gburek v, Litton Loan Servicing LP*, 614 F.3d 380, 386 n.3 (7th Cir. 2010) (same).

responds to Plaintiffs' request for loss mitigation.  The letter does not demand payment or threaten additional fees or action if the debtor fails to pay or to do anything.  The boilerplate warning on the bottom of each page does not transform the letter into actionable debt collection activity.  Based on the allegations of the amended complaint, together with the letter itself, Plaintiffs fail to allege the letter is a covered communication.

### *Wells Fargo's motion to cancel and attached affidavit of PHH*

In addition to the February 10 letter, the motion to cancel sale and PHH's attached affidavit are written communications alleged to violate the FDCPA and FCCPA.  The concise February 25 motion requests the foreclosure sale be canceled "as [Wells Fargo] is currently evaluating [Plaintiffs'] eligibility to participate in loss mitigation opportunities including a short sale of the subject property, or deed-in-lieu of foreclosure."  Dkt. 30-2 at 3 ¶ 3; Dkt. 24 ¶¶ 10, 11, 13.[10]  Because Wells Fargo had given the Plaintiffs until March 11, 2020, to submit the required

---

[10] The Court takes judicial notice of the electronic state court docket entries and the motion to cancel the sale.  *See Ates v. Florida*, 794 F. App'x 929, 930 (11th Cir. 2020) (affirming district court's taking judicial notice of electronic state court docket entries).  For that matter, the documents in the foreclosure action are public records and may be judicially noticed.  *Beepot v. J.P. Morgan Chase Nat'l Corp. Servs., Inc.*, 57 F. Supp. 3d 1358, 1366 (M.D. Fla. 2014) (taking judicial notice, on a motion to dismiss, of documents filed in the state court foreclosure action as central to plaintiff's claims); *Beepot v. J.P. Morgan Chase Nat'l Corp. Servs., Inc.*, No. 3:10-cv-423-J-34TEM, 2011 WL 4529604 n.7 (M.D. Fla. Sept. 30, 2011) (same). The Court, however, considers these documents only to the extent they speak for themselves and not for the truth of the matters alleged.  *France v. Ditech Fin., LLC*, 2018 WL 1695405, at *3 (taking judicial notice of foreclosure complaint without assuming as true the factual allegations contained therein and citing *U.S. v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994)).

information, the March 3 sale needed to be postponed to fully evaluate any future submissions. *Id*.

The supporting affidavit avers that PHH "is reviewing the borrower's eligibility to participate in loss mitigation opportunities including a short sale of the subject property. The borrower has until March 11, 2020 to submit the required information." Dkt. 24-2 ¶ 3; Dkt. 30-2 at 7 ¶ 3. Contrary to Plaintiffs' assertion in their response, the motion and affidavit do not "acknowledge[] that there was no right to foreclose the property until March 11." Dkt. 32 at 11. The court entered final judgment on the foreclosure in August 2019, and the sale was set. Neither the language in the motion nor the affidavit make any legal conclusion about the validity of the scheduled sale. Nothing in the language of either document denotes any misrepresentation made in connection with the collection of the debt. Whether these communications may be considered a "threat" or prohibited conduct will be addressed under the statutory framework.

### *Conduct Surrounding the Attempt to Cancel the Foreclosure Sale*

Plaintiffs cite only one specific section of the FDCPA in the amended complaint. They allege Defendants "violated 15 U.S.C. § 1692e(5) by threatening to take an action (the cancellation of the sale and continued loss mitigation review) that was not intended to be taken by virtue of Defendants' failure to stop same." Dkt. 24 ¶ 35. Plaintiffs allege Defendants misrepresented "that a foreclosure

would be stopped if compliance occurred." Dkt. 24 ¶ 20.  The "compliance" refers to Plaintiffs providing the required documents for the short sale by March 11. Finally, Plaintiffs allege they and others were induced (presumably by the lender's filing of the motion to cancel sale) to take no action "which may have successfully stopped the foreclosure sale."  Dkt. 24 ¶ 21.

The only two actions or threats alleged in the amended complaint are the filing of the motion to cancel the sale and the continuing of loss mitigation review. To constitute an actionable threat under § 1692e(5), the act threatened must not be "intended to be taken" but must be made "in connection with the collection" of a debt.  15 U.S.C. § 1692e.  The language of the motion and the affidavit, and the action of filing them, show Wells Fargo and PHH intended to stop the sale to facilitate a short sale to mitigate loss.  If Wells Fargo did not intend to stop the sale, as Plaintiffs allege, then these acts could theoretically constitute threats so long as they are connected to collection of a debt.  There is no factual basis, however, to support Plaintiffs' conclusory allegation that Wells Fargo and PHH never intended to stop the sale and no basis is suggested in Plaintiffs' response.

The pendency of a judicial mortgage foreclosure, or in this particular case the remaining sale, does not control whether the two alleged threats are considered debt collection subject to the FDCPA.  *See Reese*, 678 F.3d at 1217 (holding communication may both relate to enforcement of security interest and relate to

debt collection under FDCPA); *Timberlake v. Robertson, Anschutz & Schneid, P.L.*, No. 8:19-cv-3157-TPB-SPF, 2020 WL 2039722, at *4 (Apr. 28, 2020) (citing *Miljkovic* and *Reese*).[11]   A threat is defined by Black's Law Dictionary as "a communicated intent to inflict harm or loss on another or on another's property . . . [or] an indication of an approaching menace [such as] the threat of bankruptcy." *Threat*, BLACK'S LAW DICTIONARY (11th ed. 2019); *LeBlanc*, 601 F.3d at 1195 (using Black's Law Dictionary to define "threat" under § 1692e(5) in absence of statutory definition).   The issue is whether under the FDCPA either the filing of the motion or continuing the loss mitigation process constitutes a threat to take action that could not legally be taken.  *LeBlanc*, 601 F.3d at 1193.  Under the circumstances of this case and the least-sophisticated consumer standard, neither could be perceived as a threat, much less a "threat to take legal action."[12]

The motion to cancel and the continuing mitigation process do not intend to inflict harm on Plaintiffs or their property, nor do they claim legal action will be

---

[11] In the context of nonjudicial foreclosures, the Supreme Court recently held that parties who assist creditors do not fall with the general, broad definition of debt collector and are therefore not subject to all of the FDCPA's regulations. *Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029, 1038 (2019).  *Obduskey* left open the question of what "other conduct" might convert enforcers of security interests into debt collectors subject to all of the regulations.  *Id*. at 1040; *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 476 (6th Cir. 2020); *Timberlake*, 2020 WL 2039722, at *4.  The *Obduskey* Court expressly declined to decide "whether those who judicially enforce mortgages fall within the scope of the primary definition" of debt collector under the FDCPA. *Obduskey*, 139 S. Ct. at 1039.

[12] Even if the February 10 letter were alleged to have been a threat, the letter fails to fulfill the definition.  Nothing in the letter expressed an intent to inflict harm or loss in any capacity on the Plaintiffs, let alone threaten any legal action.

taken if the Plaintiffs fail to do something.  Indeed, the motion and process have quite the opposite effect of inflicting harm—they seek to allow Plaintiffs to attempt to stay in their home.  Had Plaintiffs desired to stop the sale, nothing prevented Plaintiffs from filing a motion to cancel the sale.  Plaintiffs' allegations are rooted in the flawed premise that a party possesses the power to force a court to cancel a foreclosure sale on a specific ground, loss mitigation.

### *Conduct After the Motion to Cancel was Denied*

Plaintiffs assert that Wells Fargo should have renewed the request to cancel the sale, moved for a rehearing on the motion, or appealed the order denying the motion.  Dkt. 24 ¶ 13.  In other words, Wells Fargo should never have capitulated to the trial court's initial ruling.  These allegations, without more, suggest no plausible basis, in law or in fact, why the trial court would more likely than not reverse its own ruling.  There is no guarantee, or scenario posed by Plaintiffs in the amended complaint or their response, that the state court judge would have granted a second challenge to the scheduled sale.  Nor is there a factual basis to substantiate Plaintiffs' allegation that this failure to continue to try to stop the sale, just three days away from the sale date, somehow induced Plaintiffs not to file their own motion or appeal.  It is too attenuated to characterize Wells Fargo's failure to take a very specific action in the state judicial proceeding as conduct connected to the collection of a debt.  Simply put, Wells Fargo could not force the state court to

cancel the sale under the circumstances of this case.  Moreover, at this juncture in the proceedings, there was no debt to be collected.[13]

## PHH as Debt Collector

Having found that the alleged communications and conduct are not related to the collection of a debt, the Court need not determine whether PHH was a debt collector under the FDCPA.  Even assuming debt collection activity existed, the allegations do not state that PHH is a debt collector.

The statutory definition of "debt collector" specifically excludes a person "attempting to collect a debt owed or due . . . [to] another to the extent such activity concerns a debt which was not in default at the time it was obtained by such entity."  15 U.S.C. § 1692a(6)(F)(iii).[14]  Hence, a loan servicing company that becomes the servicer before the loan at issue was in default is not a "debt

---

[13] Foreclosure activity is not debt collection under the FDCPA where no deficiency judgment is sought.  *Farquharson*, 2015 WL 13021660, at *2.  Under Florida law, there must be a final judgment of foreclosure and a subsequent foreclosure sale before seeking a deficiency on the debt obligation created by the promissory note.  *Baggett v. Law Offs. of Daniel C. Consuegra, P.L.*, No. 3:14-cv-1014-TJC-PDB, 2015 WL 1707479, at *5 (M.D. Fla. Apr. 15, 2015).  Both a deficiency action and a deficiency judgment may constitute debt collection activity under the FDCPA and FCCPA.  *Reese*, 678 F.3d at 1217–18; *Brunner v. Clearspring Loan Servs., Inc.*, No. 8:18-cv-955-JSM-AEP, 2018 WL 7268146, at *2 (M.D. Fla. Oct. 2, 2018); *Goodin*, 114 F. Supp. 3d at 1206–07; *Baggett,* 2015 WL 1707479, at *5.  Wells Fargo notes that it did not file a motion for a deficiency judgment.  Dkt. 31 at 17.  Foreclosing on a home is the enforcement of a security interest, not debt collection *per se*.  *Warren v. Countrywide Home Loans, Inc.*, 342 F. App'x 458, 461 (11th Cir. 2009).  "When a foreclosure complaint seeks a deficiency judgment if applicable, it attempts to collect on the security interest *and* the note and is, therefore, debt collection activity under the FDCPA."  *Delia v. Ditech Fin., LLC*, No. 6:16-cv-1901-GAP-DCI, 2017 WL 2379819, at *3 (M.D. Fla. June 1, 2017) (internal quotations and quotation marks omitted) (emphasis in original).

[14] The FCCPA's definition of "debt collector" is similar.  Fla. Stat. § 559.55(7)(f).

collector" under the FDCPA. *Fenello v. Bank of Am., NA*, 577 F. App'x 899, 902 (11th Cir. 2014) (holding loan servicer not debt collector under FDCPA because debt was not in default at time it became servicer).[15]  The method by which the entity acquires or "obtains" the debt determines whether the entity is a "debt collector" subject to the requirements of the FDCPA.  For example, a debt acquired by an assignment after default can make the assignee a debt collector.  *See Deutsche Bank Nat'l Trust Co. v. Foxx*, 971 F. Supp. 2d 1106, 1114 (M.D. Fla. 2013).  On the other hand, a mortgage company that acquires a mortgage through merger with the original mortgage holder, rather than acquiring the mortgage through specific assignment, is not a debt collector because the mortgage was not obtained while the mortgage was in default.  *Brown v. Morris*, 243 F. App'x 31, 34–35 (5th Cir. 2007).

The amended complaint alleges PHH began servicing the mortgage loan at some point after the mortgage foreclosure action was filed but before it concluded. Dkt. 24 ¶¶ 5, 12; Dkt. 24-1 ¶ 1.  Exhibits to the amended complaint confirm that Ocwen Loan Servicing, LLC ("Ocwen") serviced the loan prior to PHH, and, in fact, Ocwen was servicing the loan as early as February 2016 when the loan was

---

[15] *See also Goodin*, 114 F. Supp. 3d at 1204 (evaluating whether loan acquired by entity was "in default" for purposes of determining "debt collector" status); *Church v. Accretive Health, Inc.*, No. Civ. 14-57-WS-B, 2015 WL 7572338, at *8 (S.D. Ala. Nov. 24, 2015) (same).

modified.  Dkt. 24-3 at 38–45.[16]  Rather than alleging PHH is a debt collector, Plaintiffs allege that PHH "acknowledges that its communication is, in fact, from a debt collector."  Dkt. 24 ¶ 12.  This acknowledgement refers to the disclaimer language in the footers of each page of the February 10 letter.

It is also significant that Ocwen is not alleged to be a "debt collector."  Any such allegation would have been contradicted by the state foreclosure complaint and the 2016 modification agreement attached to the amended complaint.  Dkt. 33 at 5; Dkt. 24-3 at 3 ¶¶ 8,10, and at 28–45.  The loan was not in default until April or May 2016.  *Id*.  These exhibits establish that Ocwen was the servicer before the loan went into default, and as such, was not a debt collector.[17]

Plaintiffs allege that PHH "purchased" Ocwen.  Dkt. 24 ¶ 19.  The word "assign" or "assignment" does not appear in the amended complaint or its exhibits.  PHH provides documents to show that Ocwen and PHH merged after the loan went

---

[16] As further confirmation, when Wells Fargo filed the foreclosure action in April 2017, Ocwen verified the state court complaint, signing as "Ocwen Loan Servicing, LLC as Attorney-in-fact for [Defendant Wells Fargo, as Trustee, *etc*.]."  Dkt. 24 ¶¶ 12, 19; Dkt. 24-3 at 7.

[17] Plaintiffs rely on two cases to support their contention they sufficiently allege PHH is a debt collector. Dkt. 32 at 8–9.  In *Negron*, the court found sufficient an allegation that Selene was a debt collector when coupled with the statement that the property at issue was purchased out of a bankruptcy estate, indicating that the property was in default at the time Selene acquired the property.  *Negron v. Selene Fin., LP*, No. 8:16-cv-2231-CEH-MAP, 2017 WL 2721827, at *4 (M.D. Fla. June 23, 2017).  In *Johnson*, the court was able to infer that SLS was a mortgage servicing company that acquired the specific loan at issue while it was in default.  *Johnson v. Specialized Loan Serv., LLC*, No. 3:16-cv-178-MCR, 2017 WL 8314654, at *5 (M.D. Fla. Jan. 17, 2017).  The amended complaint here does not sufficiently allege that PHH was a debt collector, particularly in view of the merger.

into default.  Dkts. 30-3, 30-4.[18]  This contention negates PHH's status as a debt

collector by invoking the § 1692a(6)(f)(iii) exception.[19]  PHH argues that because

Ocwen serviced the loan before it was in default, and the two companies merged,

PHH did not acquire or obtain the loan but instead stood in the shoes of Ocwen.

Dkt. 33 at 5.  Plaintiffs counter that the issue of whether the subject loan was

necessarily included in the merger between Ocwen and PHH cannot be determined

from the documents themselves.  Dkt. 30 at 7.  Without opining on the merger

documents, the Court finds Plaintiffs fail to allege that PHH was a debt collector.

**FCCPA (against both Defendants)**

The Florida litigation privilege is uniquely available under the FCCPA.[20]

Defendants also move to dismiss the FCCPA claim based on collateral estoppel

and res judicata.  Because Plaintiffs fail to allege debt collection activity, the Court

need not address these arguments.

For the reasons set forth above, the amended complaint fails to state a claim

for relief under the FDCPA or FCCPA, and the motion to dismiss (Dkt. 31) is

---

[18] Defendants rely on and cite *Rawls v. Wells Fargo Bank, N.A.*, No. 8:18-cv-2571-VMC-TGW, 2019 WL 293325, at *3 (M.D. Fla. Jan. 23, 2019) (taking judicial notice of articles of merger between Wachovia and Wells Fargo because documents are public record and issued by FDIC and the Comptroller of Currency, which are both sources whose accuracy cannot be questioned).
[19] To fall outside the definition of a debt collector, the debt must not be in default "at the time it was obtained" by the alleged debt collector.  15 U.S.C. § 1692e(6)(f)(iii).
[20] An affirmative defense, however, is best left for resolution after some factual development, not on a motion to dismiss.  *See, e.g.*, *Velez v. Bank of Am., N.A.*, 8:18-cv-88-RAL-MAP, 2018 WL 1858148, at *3 (M.D. Fla. Apr. 18, 2018) (Florida litigation privilege as affirmative defense).

granted.  Plaintiffs took the opportunity to amend their complaint after previously being presented with Defendants' arguments. [21]  Dkts. 20, 24.  The amendment simply deleted the allegations against the Defendant law firm in view of its dismissal from this case.  An amended complaint, if any, must be filed within fourteen (14) days or this case will be closed without further notice.  To the extent noted herein, Defendants' motion for judicial notice (Dkt. 30) is granted.

**DONE AND ORDERED** at Tampa, Florida, on March 9, 2021.

**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of record

---

[21] For cases granting dispositive motions to dismiss under the FDCPA or FCCPA, *see*, *e.g.*, *Bardak v. Ocwen Loan Servicing, LLC*, No. 8:19-cv-1111-SCB-TGW, 2020 WL 5104523 (M.D. Fla. Aug. 12, 2020); *Wright*, 2020 WL 4428477; *Teetrick v. Bank of Am., N.A.*, No. 6:18-cv-2061-ACC-DCI, 2019 WL 1787520 (M.D. Fla. Apr. 24, 2019); *Rawls v. Wells Fargo Bank, N.A.*, No. 8:18-cv-2571-VMC-TGW, 2019 WL 293325 (M.D. Fla. Jan. 23, 2019); *Alhassid v. Nationstar Mortg. LLC*, No. 1:16-cv-21211-KMM, 2016 WL 4269867 (S.D. Fla. Aug. 10, 2016), *aff'd*, 688 F. App'x 803 (11th Cir. 2017); *Dyer v. Select Portfolio Serv., Inc.*, 108 F. Supp. 3d 1278 (M.D. Fla. 2015).