## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

SCOTT MATHIESON and
TRUDY MATHIESON, and all others
similarly situated,

      Plaintiffs,

v.                          CASE NO. 8:20-cv-2728-WFJ-SPF

WELLS FARGO BANK, N.A.,
as Trustee for the Pooling and Servicing
Agreement Dated as of June 1, 2006
Securitized Asset Backed Receivables
LLC Trust 2006-FR2 Mortgage
Pass-Through Certificates, Series 2006-FRS, LLC;
PHH MORTGAGE CORPORATION; and
ROBERTSON, ANSCHUTZ & SCHNEID, PL,

      Defendants.
_____/

## ORDER

Before the Court is the motion to dismiss filed by Wells Fargo Bank, N.A.,

*etc*. ("Wells Fargo")[1] and PHH Mortgage Corporation ("PHH") (Dkt. 40), the

response (Dkt. 43), and the reply (Dkt. 44).[2]  After careful consideration of the

allegations of the second amended complaint and attachments (Dkt. 35), the

---

[1] Wells Fargo is described in this action as Wells Fargo Bank, N.A., as Trustee for the Pooling and Servicing Agreement dated as of June 1, 2006 Securitized Asset Backed Receivables LLC Trust 2006-FR2 Mortgage Pass-Through Certificates, Series 2006-FRS, LLC.  Dkts. 1 & 24.

[2] A notice of supplemental authority was filed recently.  Dkt. 48 (citing *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021)).

submissions of the parties, and the applicable law, the Court grants the motion.

## ALLEGATIONS

In the second amended complaint, Plaintiffs Scott and Trudy Mathieson bring two counts against both Defendants Wells Fargo and PHH: (1) violations of the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. § 559 *et seq.* (Count I); and (2) violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* (Count II).  The second amended complaint adds more detail surrounding the allegedly violative communications, as well as the default status of the loan during the relevant times Ocwen Loan Servicing, LLC ("Ocwen") and PHH, respectively, were servicing the loan.  The allegations and various exhibits describe the following scenario.[3]  *See* Dkts. 35, 35-1, 35-2, 35-3, 35-4.

### *Events Leading to the Foreclosure*

The Mathiesons purchased a home in Pasco County, Florida, in January 2006.  Dkt. 35-1 ¶ 4.  Mr. Mathieson executed a promissory note on January 6, 2006.  Dkt. 35-1 ¶ 3 & at 8–13.  A mortgage to secure the loan was recorded on January 18, 2006.  Dkt. 35-1 ¶ 4 & at 14–37.  The loan was modified effective April 1, 2016.  Dkt. 35-1 ¶ 4 & at 39.

---

[3] All well-pleaded facts are taken as true and viewed in the light most favorable to Plaintiffs.  *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

Mr. Mathieson signed the April 2016 modification agreement on February 10, 2016, and Ocwen signed on behalf of Wells Fargo on March 14, 2016.  Dkt. 35-1 at 42−43; Dkt. 35 ¶ 9.  The modification agreement names the servicer at the time as Ocwen.  Dkt. 35-1 at 38.

In this action, the Mathiesons allege that as part of the April 2016 modification agreement, the parties "stipulated that the loan was in default at the time the modification was extended and that there was no sufficient income to make monthly mortgage payments."  Dkt. 35 ¶ 10; Dkt. 35-1 at 39.  The modification agreement itself supports this allegation, as it contains the borrower's representation that the loan was in default: "I am in default under the Loan Documents."  Dkt. 35-1 at 38, 42.  The modification agreement further provides that if the borrowers "do not comply with the terms of the Loan Documents, as modified by this Agreement," then the borrowers "will be in default."  Dkt. 35-1 at 39.

### ***The Foreclosure***

In April 2017, Wells Fargo filed a foreclosure action against the Mathiesons. Dkt. 35-1.  Ocwen was the servicer of the loan when the foreclosure action was filed, as is indicated by Ocwen's verification of the foreclosure complaint in March 2017.  Dkt. 35 ¶ 9 at 2; Dkt. 35-1 at 7.  The state foreclosure complaint alleged that the Mathiesons were in default on the "Note and Mortgage by failing to pay the

payment due as of May 1, 2016." Dkt. 35-1 at 3.  The May 2016 default date, however, derives from the payments due under the loan modification.

Wells Fargo sought a deficiency judgment as part of the "wherefore" clause at the end of the one-count complaint for foreclosure in the event "the proceeds of the sale are insufficient." Dkt. 35-1 at 5.  According to Wells Fargo's counsel, though, a deficiency judgment was never sought.  Dkt. 40 at 11 (citing the docket of the foreclosure action at Dkt. 30-1).

During the pendency of the foreclosure action, Defendant PHH became the new servicer on the loan on June 1, 2019.  Dkt. 35-2; Dkt. 35 ¶ 6.  The June 4 loan transfer notice recites the following "mini-*Miranda*" language at the bottom of each page:

> This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose.  However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property.  It is not intended as an attempt to collect a debt from you personally.

Dkt. 35-2 at 1−8.

A final judgment of foreclosure was filed and recorded on August 16, 2019. Dkt. 35 ¶ 13; Dkt. 43-2 (judgment).  The property was noticed for foreclosure sale to occur on September 17, 2019, and later rescheduled for sale on March 3, 2020, which was the date it sold.  Dkt. 35-4 at 2; Dkt. 43-2 at 3.

### *Post-judgment Events*

After the foreclosure judgment but before the March 3 sale, Defendants sent the Mathiesons four written communications—three letters and a motion to cancel the sale with affidavit attached.  Two of the three letters are not attached to the second amended complaint but are attached to the response to the motion to dismiss.

On January 14, 2020, PHH sent the Mathiesons "an early intervention borrower assistance letter," which "referenced foreclosure and that the maturity [date] had been accelerated."  Dkt. 35 ¶ 18.  The Mathiesons allege Wells Fargo and PHH "then told the borrowers that reinstatement could occur by ***paying the past due payments***."  Dkt. 35 ¶ 18 (emphasis in original).  The January 14 assistance letter, which is not attached to the second amended complaint, states that PHH's "records indicate this account is in foreclosure and its maturity date has been accelerated" and that the "account can be reinstated by paying the past due payment(s)."  Dkt. 43-1 at 1 (Jan. 14 letter).  The letter separately lists eight "possible options," including "Reinstatement: The account can be reinstated by paying the past due amount(s)."  Dkt. 43-1 at 3.  The following language appears at the bottom of each page of the January 14 letter:

> This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose.  However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for

informational purposes only with regard to our secured lien on the above referenced property.  It is not intended as an attempt to collect a debt from you personally.  As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

Dkt. 43-1 at 1–5.

The Mathiesons allege that "a loss mitigation hold was placed on the borrowers file" on January 29, 2020, which was "35 days prior to the scheduled foreclosure sale and within 2 weeks of the Defendant sending its correspondence." Dkt. 35 ¶ 21.  The January 29 letter, which is not attached to the second amended complaint, states that the application for mortgage assistance was received and that the application was complete as of January 27, 2020.  Dkt. 43-1 at 6 (Jan. 29 letter).  It further provides: "Any applicable foreclosure actions are on hold.  Please be aware that, although the foreclosure actions have begun, no foreclosure sale will occur while we evaluate the complete package and if the account is approved for an assistance option, the accountholder(s) must comply with all requirements of the approved option." Dkt. 43-1 at 6–7.  Each page of the letter contains the same debt collection language found in the January 14 letter.  Dkt. 43-1 at 6–7.

On February 10, 2020, PHH wrote Mr. Mathieson that Plaintiffs' account qualified for certain "available options." Dkt. 35-3 at 1 (Feb. 10 letter).  The February 10 letter, which is attached to the second amended complaint, "conditionally approved [Plaintiffs] for a short sale or a deed-in-lieu of

6

foreclosure." Dkt. 35 ¶ 22.  This loss mitigation letter gave the Mathiesons until

March 11, 2020, to send PHH four specific documents.  Dkt. 35 ¶ 23; Dkt. 35-3 at

5.  At the bottom of each page of the February 10 letter appears the same debt

collection disclaimer found in the January 14 and 29 letters.  Dkt. 35-3 at 1–9.

The Mathiesons allege that they "started submitting the necessary

documents" on or around February 25, 2020.  Dkt. 35 ¶ 27.  Also on February 25,

Wells Fargo filed a motion to cancel the sale for the purposes of evaluating the

Mathiesons' "eligibility to participate in loss mitigation opportunities" and gave

them until March 11, 2020, to submit the requested information.  Dkt. 35 ¶¶ 24, 25;

Dkt. 35-4 at 2 (Feb. 25 motion).  Wells Fargo submitted an affidavit of PHH with

an attachment in support of the motion.  Dkt. 35 ¶ 26; Dkt. 35-4 at 5–15 (affidavit

and attachment).  Attached to the affidavit was the February 10 letter of

conditional approval with the disclaimer language at the bottom of each page.  Dkt.

35-4 at 7–15.  On February 28, 2020, the state court denied the motion to cancel

the sale.  Dkt. 35 ¶ 28; Dkt. 30-1 at 7 (state court docket showing entry of Feb. 28,

2020 order).

The Mathiesons allege that Defendants failed to follow the explicit

instructions provided in the judgment denying Defendants' motion to cancel the

sale.  Dkt. 35 ¶ 13.  Specifically, they allege that Defendants should have set the

matter for hearing instead of sending only a letter with a proposed order to the

court.  Dkt. 35 ¶ 28.  The Mathiesons also allege that no renewed objection to the sale was made, nor any attempt to rescind the sale.  Dkt. 35 ¶ 29.  With respect to the sale, the foreclosure judgment provides:

> The sale date set by the judgment can only be canceled and rescheduled by court order.  Any motion or request to cancel this sale must be served on all parties in conformity with Florida Rule of Civil Procedure 1.080(a) and must be set for hearing with proper notice.  Claiming this matter is an "emergency" does not avoid this requirement.  A violation of any party's due process rights will subject the movant and/or counsel to sanctions.  *See Jade Winds v. Citibank*, 63 So. 3d 819 (3d DCA 2011).
>
> If a Plaintiff wishes to cancel a sale, a written motion must be filed with the Court in substantial compliance with Florida Rules of Civil Procedure Form 1.996(c).  The motion also must state the number of times the Plaintiff has previously requested the cancelation of a sale and must include an affidavit with supporting grounds for the motion.  Any proposed order prepared to cancel the sale must also include a date to reschedule the sale.

Dkt. 43-2 at 3.

Overall, as previously noted, the second amended complaint contains more details surrounding the two communications discussed in this Court's prior order, and it identifies additional communications.  *See* Dkt. 34 (prior order discussing Feb. 10 letter and Feb. 25 motion to cancel sale); Dkt. 35 ¶¶ 18, 21 (additional communications of Jan. 14 and 29 letters).  The Mathiesons also expand on the allegations concerning the timing of the transfer of the loan from Ocwen to PHH.  *See* Dkt. 35 ¶¶ 14, 15.  These additional allegations will be addressed under the relevant grounds Defendants raise in support of dismissal.

## STANDARD FOR DISMISSAL

For purposes of a motion to dismiss, all well-pleaded factual allegations are accepted as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Legal conclusions need not be accepted as true unless supported by facts. *Iqbal*, 556 U.S. at 678–79; *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003) ("[U]nwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal.").  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also Belanger v. Salvation Army*, 556 F.3d 1153, 1155 (11th Cir. 2009) (reviewing grant of motion to dismiss *de novo* and "accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff").  In drawing all reasonable inferences from the factual allegations in the plaintiff's favor, a court is authorized to dismiss a claim based on a dispositive issue of law. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

Documents attached as exhibits to the complaint and documents referenced in the complaint may be considered in ruling on a motion to dismiss. *See Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1215–16 (11th Cir. 2012)

(treating dunning letter attached to complaint as part of the complaint for Fed. R. Civ. P. 12(b)(6) purposes).[4]  Documents attached to the response to the motion to dismiss may also be considered without converting the motion into a summary judgment.  *See Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 945 F.3d 1150, 1162 (11th Cir. 2019) (applying rule—that court may consider "exhibits attached to a motion to dismiss without converting the motion into one for summary judgment if the exhibits are (1) central to the plaintiff's claim and (2) their authenticity is not disputed"—to exhibits attached to an opposition to the motion).  Documents attached to the response, however, may not be used to amend the complaint.  *Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1355 n.6 (S.D. Fla. 2012) (citing *Long v. Satz*, 181 F.3d 1275, 1278–79 (11th Cir. 1999), which held that district court did not abuse discretion in denying request to amend complaint found in responsive memorandum to motion to dismiss).

## DISCUSSION

Defendants argue that 1) neither Defendant is a debt collector, 2) the Mathiesons fail to identify any actionable communications, 3) Defendants' conduct leading up to the denial of the motion to cancel sale is not actionable, and 4) the

---

[4] *See also Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205 (11th Cir. 2007) (considering 21 exhibits attached to complaint as part of the pleading "for all purposes" under Fed. R. Civ. P. 10(c)); *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (considering documents central to or referenced in complaint and matters judicially noticed); *Wright v. AR Res., Inc.*, No. 8:20-cv-985-T-33CPT, 2020 WL 4428477, at *2 (M.D. Fla. July 31, 2020) (dismissing FDCPA complaint).

claim that Defendants communicated directly with the Mathiesons when they were represented by counsel is unsupported by any factual allegations.  Dkts. 40 & 44.  The Mathiesons attach two new documents to their response to the motion to dismiss: the January 14 and 29 letters from PHH.  Dkt. 43-1.  They argue that the post-foreclosure letters, motion, and affidavit, together with Defendants' conduct leading up to the sale, constitute a violation of the FDCPA and FCCPA.

### *Wells Fargo as a Debt Collector*

Defendants argue that the allegation that Wells Fargo is a debt collector is not only conclusory but contradicted by other allegations and attachments.  Defendants also contend that Wells Fargo is a creditor not subject to the FDCPA or FCCPA.  The Court agrees.

To state a plausible claim for relief under the FDCPA, a plaintiff must first allege that the defendant is a debt collector, and second that the defendant engaged in an act or omission related to debt collection that is prohibited by the FDCPA.  *Reese*, 678 F.3d at 1216–17.[5]  A "debt collector" includes one who engages (1) "in any business the principal purpose of which is the collection of any debts," or (2) "who regularly collects or attempts to collect, directly or indirectly, debts owned or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  The FDCPA usually does not apply to creditors trying to collect their own debts.  *Pinson v.*

_____

[5] *See also Owens-Benniefield v. BSI Fin. Servs.*, 806 F. App'x 853, 856 (11th Cir. 2020).

*JPMorgan Chase Bank, Nat'l Ass'n*, 942 F.3d 1200, 1209 (11th Cir. 2019) (citing

*Davidson v. Capital One Bank (USA), N.A.*, 797 F.3d 1309, 1313 (11th Cir. 2015)).

The definition of "debt collector" may nevertheless include a creditor "who, in the

process of collecting his own debts, uses any name other than his own which

would indicate that a third person is collecting or attempting to collect such debts."

15 U.S.C. § 1692a(6); *Pinson*, 942 F.3d at 1209 ("false-name exception");

*Davidson*, 797 F.3d at 1314 n.5.[6]

Even if a person qualifies as a debt collector under one of the two statutory

definitions—the business's principal purpose is debt collection, or the person

regularly collects debts owed another—there are exceptions that may apply to

exclude the otherwise established debt collector from the FDCPA.  *Id.* at 1314.

Two of the exclusions from the term "debt collector" include a person collecting or

attempting to collect a debt due (1) when that debt originated with such person, or

(2) when the debt was not in default at the time it was obtained by such person.  15

U.S.C. § 1692a(6)(F)(ii)−(iii).

The second amended complaint alleges that Defendant Wells Fargo is a debt

collector under the FDCPA.[7]  Dkt. 35 ¶ 48.  However, more than this conclusory

---

[6] *See also Teetrick v. Bank of Am., N.A.*, No. 6:18-cv-2061-Orl-22DCI, 2019 WL 1787520, at *3
n.3 (M.D. Fla. Apr. 24, 2019) (citing 15 U.S.C. § 1692a(6)(F)(ii) and case law that provide that
creditors are not generally subject to the FDCPA and noting that plaintiff did not assert in the
pleadings that the exceptions to this rule applied).
[7] In accordance with the FCCPA, Wells Fargo is alleged to be a person seeking to collect
consumer debts.  Dkt. 35 ¶ 40.  The FCCPA does not restrict its application to statutorily defined

statement is required.  *Alhassid v. Nationstar Mortg., LLC*, 771 F. App'x 965, 968

(11th Cir. 2019).[8]  Nowhere in the second amended complaint does it state that the

"principal purpose" of Wells Fargo's business is debt collection, nor that Wells

Fargo regularly collects debts owed or due another at the time of collection.  The

Mathiesons, therefore, fail to allege any factual content to reasonably infer that

Wells Fargo meets the initial statutory definition of a debt collector, much less falls

into a statutory exception under section 1692a(6)(F).

To the contrary, the allegations establish that Wells Fargo is a creditor.  The

second amended complaint alleges that the loan was "held by Wells Fargo" and the

modification was "executed by and on behalf of Wells Fargo."  Dkt. 35 ¶¶ 9, 14.

The state court determined Wells Fargo to be the creditor in the mortgage

foreclosure judgment entered in favor of Wells Fargo.  Dkt. 43-2.  These

allegations establish not that Wells Fargo is a debt collector; rather, Wells Fargo is

much more akin here to a creditor not subject to the FDCPA.  Wells Fargo,

although not the originator of the 2006 loan, held the original note at the time the

---

"debt collectors," unlike the FDCPA.  *Alhassid v. Nationstar Mortg., LLC*, 771 F. App'x 965, 969 (11th Cir.2019) (citing *Oppenheim v. I.C. Sys., Inc.*, 627 F.3d 833, 839 (11th Cir. 2010)); *Daley v. Bono*, 420 F. Supp. 3d 1247, 1257 n.9 (M.D. Fla. 2019); *compare* 15 U.S.C. § 1692c(a) ("a *debt collector* may not communicate with a consumer in connection with the collection of any debt") *with* Fla. Stat. § 559.72 ("In collecting consumer debts, no *person* shall . . .") (emphasis added).

[8] In *Alhassid*, the allegations of the complaint established that Nationstar acquired the loan as servicer before the default date.  771 F. App'x at 968.  The dismissal of Alhassid's FDCPA claim was affirmed on appeal for failure to allege that the debt was in default at the time it was obtained by Nationstar.  *Id*. at 968–69.

foreclosure suit was filed in April 2017.  Dkt. 24-3 ¶ 6.  To the extent Wells Fargo may have been trying to collect a debt after the foreclosure judgment, the debt belonged to Wells Fargo and not some third party.

The Court notes that the Mathiesons, for the first time, rely on the transfer of service notice of June 4, 2019, for the proposition that an entity other than Wells Fargo is the creditor.  *See* Dkt. 35 ¶ 16 ("Defendant, PHH, in page 7 of the servicing transfer document gave an explicit FDCPA Verification by and on behalf of creditor SABR 2006-FR2, *an entity that appears to be missing entirely from the state court foreclosure action*.") (emphasis added); Dkt. 35-2.[9]  The Mathiesons seem to suggest that SABR 2006-FR2, the entity described as the creditor in the notice, is not the same entity as Defendant Wells Fargo Bank, N.A., as Trustee for the Pooling and Servicing Agreement dated as of June 1, 2006 Securitized Asset Backed Receivables LLC Trust 2006-FR2 Mortgage Pass-Through Certificates, Series 2006-FRS.  Nevertheless, the Mathiesons concede that the named Defendant Wells Fargo is the same entity that "obtained an undisturbed final judgment in the state court foreclosure."  Dkt. 43 at 14.  Consequently, their attempt to argue that

---

[9] The Wells Fargo entity that appeared in the complaint and final judgment in the state court foreclosure is "Wells Fargo Bank, N.A., as Trustee for the Pooling and Servicing Agreement dated as of June 1, 2006 Securitized Asset Backed Receivables LLC Trust 2006-FR*2* Mortgage Pass-Through Certificates, Series 2006-FR*2*."  Dkts. 24-3 & 43-2 (emphasis added).  In the present case, for reasons that remain unclear, the Mathiesons named as a defendant "Wells Fargo Bank, N.A., as Trustee for the Pooling and Servicing Agreement dated as of June 1, 2006 Securitized Asset Backed Receivables LLC Trust 2006-FR*2* Mortgage Pass-Through Certificates, Series 2006-FR*S*."  Dkt. 35 (emphasis added).

the notice of transfer negates the possibility that Wells Fargo is a creditor because the validation lacks the "name of the actual creditor to whom the debt is owed" is unavailing.[10]

The allegations and attachments fail to demonstrate that Wells Fargo meets the statutory definition of a debt collector under either the FDCPA or FCCPA, or any exclusion under section 1692a(6)(F). The Mathiesons' argument that the disclaimers at the bottom of each page in the written communications transform Wells Fargo into a debt collector will be discussed within the section below regarding conduct and communications.[11]

### ***PHH as a Debt Collector***

The same statutory framework set forth above applies to determine whether PHH is a debt collector. The second amended complaint alleges that PHH is a debt collector and a servicer of the loan. Dkt. 35 ¶¶ 6, 40, 48. Because the allegations, assumed as true, meet the initial statutory definition of "debt collector," the issue becomes whether a statutory exception under section 1692a(6)(F), specifically

---

[10] Service transfer letters are typically informational as opposed to an attempt to collect a debt. *See Wood v. Citibank, N.A.*, No. 14-civ-2819-T-27EAJ, 2015 WL 3561494, at *4 (M.D. Fla. June 4, 2015) (finding transfer notices "purely informational" and not attempts to collect debt); *Shallenburg v. PNC Bank, N.A.*, No. 18-civ-2225-T-36TGW, 2020 WL 555447, at *9 n.8 (M.D. Fla. Feb. 4, 2020) (citing *Fenello v. Bank of Am., NA*, 577 F. App'x 899, 902 (11th Cir. 2014)) (finding letter identifying entity as "debt collector" does not "transform" that entity into a debt collector under FDCPA at pleading stage).

[11] Courts often discuss disclaimers asserted in communications in conjunction with an analysis of whether the communication is in connection with a debt. *See, e.g., Alhassid*, 771 F. App'x at 968.

subsection (iii), applies to exclude PHH from liability under the statute.  *See* 15 U.S.C. § 1692a(6)(F)(iii) ("debt collector" is not a person "attempting to collect any debt . . . which was not in default at the time it was obtained by such person").[12]

The Mathiesons argue, in part, that the status of PHH as a debt collector derives from the status of Ocwen.  They posit that if Ocwen was a debt collector in both February 2016 (when it signed the modification agreement) and June 2019 (when PHH became the servicer), then PHH is also a debt collector.  Dkt. 43 at 15−19.  The Court has not previously addressed the status of the original loan prior to the May 2016 default under the loan modification agreement, which prompted the foreclosure action.  Dkt. 34 at 17–20.  The question of PHH's status will be resolved against the backdrop of the factual history of the mortgage loan.

According to the alleged facts, Ocwen was servicing the loan in February 2016 when the original loan was in default.  Dkt. 35 ¶¶ 9−10.  The loan modification clearly recites that the loan was in default when Mr. Mathieson signed the modification in February 2016 and when Ocwen signed it in March 2016.  Dkt. 35-1 at 39, 42−43.  However, the precise date Ocwen began servicing the loan is missing from the pleadings and attachments.

---

[12] The FCCPA's definition of "debt collector" is similar to that of the FDCPA with respect to excluding those persons who obtained the debt when the debt was not in default.  *See* Fla. Stat. § 559.55(7)(f).

It is well-settled law that if Ocwen began servicing the loan before the stipulated default referred to in the loan modification, Ocwen was not a "debt collector" at that time. *See Fenello v. Bank of Am., NA*, 577 F. App'x 899, 902 (11th Cir. 2014) (concluding that district court was correct that servicer was not debt collector because debt was not in default at time entity became the servicer); *Church v. Accretive Health, Inc.*, No. Civ. 14-57-WS-B, 2015 WL 7572338, at *8 (S.D. Ala. Nov. 25, 2015) (citing *Fenello*, 577 F. App'x at 902). Taking the factual allegations as true, as it must, this Court cannot determine either way if Ocwen was servicing the loan prior to the default that led to the modification and, therefore, cannot conclude Ocwen is excluded from the definition of "debt collector." The absence of facts concerning Ocwen's status at the time it initially began servicing the loan, however, is not definitive of whether Ocwen or PHH is a debt collector in this action.

Assuming for argument's sake that Ocwen was a debt collector at the time of the 2016 modification, Ocwen would not necessarily continue as a debt collector under certain circumstances. Defendants rely on authority stating that a modification of the original loan may create an obligation anew, depending on the language of the modification. *See Bailey v. Sec. Nat'l Servicing Corp.*, 154 F.3d 384, 387 (7th Cir. 1998) (holding that servicer is not debt collector where servicer

sought to collect on new obligation under forbearance agreement).  In *Bailey*, the

court wrote:

> If [the mortgage servicer] seeks to collect on payments currently due
> under the new superseding agreement then [the mortgage servicer] is
> not a "debt collector" under the Act . . . because the debtor is not in
> default under that agreement.  One more "if" might help: if we did not
> make this common-sense distinction between defaulted agreements and
> superseding agreements not in default, we would be ignoring the terms
> and the parties' undoubted purpose behind the new payment plans by
> saying that a debtor in default can never have his slate wiped clean or
> given a last chance to become credit-worthy under a new plan.  We also
> would be saying that a mortgage servicer . . . is a debt collector that is
> subject to the hyper-technical requirements of the Act no matter how
> far down the line it is hired to service a debt that superseded a debt
> previously in default (perhaps many years earlier as mortgages
> typically last that long.)

154 F.3d at 387; *see also McWhorter v. Ocwen Loan Servicing, LLC*, No. 2:15-cv-

1831-MHH, 2017 WL 3315375, at *4 (N.D. Ala. Aug. 3, 2017) (citing *Bailey*, 154

F.3d at 387, but deferring ruling to consider additional documents related to

whether loan modification superseded original agreement).  If the 2016

modification created a new obligation, Ocwen would not be classified as a debt

collector as to the new agreement.

The 2016 modification by its terms waives all unpaid late charges, sets forth

a new interest rate and new monthly payment amount, and makes payments due

and owing April 1, 2016, the effective date of the modification.  Dkt. 35-1 at 39.

The agreement states these new terms "shall supersede any provisions to the

contrary in the Loan Documents."  Dkt. 35-1 at 39.  This language unequivocally

changes the terms of the original defaulted loan.[13]   Additionally, the foreclosure action was based on the May 2016 default under the modification, after at least one payment had been made under the modification agreement.  Under this set of facts, Ocwen was not a debt collector under the modification agreement because a new contractual obligation concerning the loan was created.

Fast forward to June 2019 when PHH began servicing the loan: The precise status of Ocwen after the May 2016 default occurred is disputed.  Defendants assert that Ocwen is either a creditor or, at the least, a mortgage servicer exempted from the definition of "debt collector."  A "debt collector does not include the consumer's *creditors, a mortgage servicing company*, or an assignee of debt, as long as the *debt was not in default at the time it was assigned*."  *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) (emphasis added).[14]

As to Ocwen's creditor status, Defendants argue that Ocwen became a creditor when it signed the modification agreement and was a creditor at the time of the May 2016 default.  The Mathiesons assert that Ocwen only serviced, and did not originate, the modification loan.  Defendants cite no authority for considering

---

[13] The facts demonstrated in an exhibit attached to the complaint override the more generalized, conclusory allegations of the complaint.  *See Farquharson v. Citibank, N.A.*, 664 F. App'x 793, 802 (11th Cir. 2016) (citing *F.T.C. v. AbbVie Prod. LLC*, 713 F.3d 54, 63 (11th Cir. 2013)).
[14] *See also Fenello*, 577 F. App'x at 902 (citing *Perry*, 756 F.2d at 1208); *Janke v. Wells Fargo & Co.*, 805 F. Supp. 2d 1278, 1281 (M.D. Ala. 2011) (quoting *Perry*, 756 F.2d at 1208).

Ocwen as the actual creditor under the modification agreement.  While is it true that Ocwen signed the agreement, the agreement names Ocwen as the servicer and does not identify Ocwen as the creditor of the loan as modified.  Indeed, paragraph 4.N. of the agreement refers to the "Lender," which is impliedly a different entity than the servicer under the agreement. Dkt. 35-1 at 41.  Without more, there is nothing to suggest that the debt originated with Ocwen to make Ocwen a creditor.

As to Ocwen's status as a servicer, an agent who is authorized to undertake collection activity—or acquires the authority to collect the money on behalf of another—has "obtained" a debt under the FDCPA.  *Carter v. AMC, LLC*, 645 F.3d 840, 843 (7th Cir. 2011); *Geiger v. Fla. Hosp. Mem'l Med. Ctr.*, No. 6:16-cv-1477-Orl37GJK, 2017 WL 1177310, at *4 (M.D. Fla. Mar. 29, 2017) (citing *Carter*, 645 F.3d at 843).  To show that Ocwen had begun servicing the loan before the default under the modification, Defendants rely on *Kanarick v. Santander Consumer USA, Inc.*, No. 9:13-cv-8003, 2014 WL 12464922, at *4–5 (S.D. Fla. Aug. 22, 2014). The *Kanarick* court determined that servicer Santander was not a debt collector because Triad, the entity which Santander acquired, had procured the loan pre-default. 2014 WL 12464922, at *5.  Thus, the court concluded Santander was not a debt collector because Triad was not one; Santander "stood in the shoes" of Triad. *Id.*

20

The Mathiesons counter that PHH is a debt collector because PHH acquired the loan post-default.  The class allegations state that PHH "purchased" Ocwen, one of the largest mortgage servicers in the country.  Dkt. 35 ¶ 34.  On the docket, Defendants filed documents showing this transaction as a merger between Ocwen and PHH.  Dkts. 30-3; 30-4.  The Court considers these documents on this motion to dismiss because they are central to an issue raised in the operative complaint— whether PHH is a debt collector.

The type of transfer matters for purposes of the FDCPA.  In *Brown v. Morris*, the mortgage servicing company acquired the loan through merger with the original mortgage holder, not specific assignment.  243 F. App'x 31, 34–35 (5th Cir. 2007).  The court held that the mortgage servicing company did not "obtain" the mortgage while in default and was, therefore, not a debt collector.[15] Other fellow district courts have found on a motion to dismiss that based on the June 2019 merger of PHH and Ocwen, PHH stands in the shoes of Ocwen.[16]  *Cf. Turner v. PHH Mortg. Corp.*, 467 F. Supp. 3d 1244, 1247 (M.D. Fla. 2020) (dismissing complaint with prejudice, finding debt of convenience fees originated

---

[15] A debt acquired by assignment after default can make the assignee a debt collector.  *See Deutsche Bank Nat'l Tr. Co. v. Foxx*, 971 F. Supp. 2d 1106, 1114 (M.D. Fla. 2013).

[16] If Ocwen were determined to be a debt collector, then PHH would also be a debt collector regardless of whether PHH acquired the loan by merger or assignment.

with Ocwen, and thereby PHH as successor by merger to Ocwen).[17]  Consequently,

if Ocwen as a mortgage servicer began servicing the loan before the mortgage was

in default, PHH is not a debt collector under the statute.  Because Ocwen began

servicing the modification agreement before the Mathiesons defaulted under that

agreement, PHH is exempt under subsection section 1692a(6)(F)(iii).[18]

### *__Conduct and Communications by Wells Fargo and PHH__*

Even assuming Wells Fargo and/or PHH are debt collectors as pled by the

Mathiesons, the alleged communications and conduct do not fall under the

FDCPA.  The questioned communications or conduct must be "related to" debt

collection.  *Cilien v. U.S. Bank Nat'l Ass'n*, 687 F. App'x 789, 792 (11th Cir.

2017) (citing *Reese*, 678 F.3d at 1216).

---

[17] Cases following *Turner* include: *Bardak v. Ocwen Loan Servicing, LLC*, No. 8:19-cv-1111-24TGW, 2020 WL 5104523, at *3 (M.D. Fla. Aug. 12, 2020) (dismissing complaint with prejudice), *appeal voluntarily dismissed*, No. 20-13297-BB (11th Cir. Mar. 17, 2021); *Lang v. Ocwen Loan Servicing, LLC*, No. 3:20-cv-81-J-20MCR, 2020 WL 5104522, at *2 (M.D. Fla. July 17, 2020) (same); *Garbutt v. Ocwen Loan Servicing, LLC*, No. 8:20-cv-136-T-36JSS, 2020 WL 5641999, at * 4 (M.D. Fla. Sept. 22, 2020) (same).

[18] The Mathiesons' remaining arguments addressing the June 2019 transfer notice lack merit. First, they claim that the transfer notice names an entity other than Defendant Wells Fargo—"SABR 2006-FR2"—as the creditor.  They argue that the notice is misleading because only the true creditor should be named in the FDCPA verification found in the transfer notice. Dkt. 43 at 13–15.  Second, they assert that only debt collectors can send an FDCPA verification and, therefore, the transfer notice constitutes an admission by PHH that it is a debt collector. *Id*.  As Defendants point out, the transfer notice was required post-merger based on the change in the mailing address for payments.  *See* 12 CFR § 1024.33(b)(2)(i); Dkt. 35-2 at 1, 3.  In any event, notifying the borrower of the assignment or transfer of a mortgage is not debt collection activity. *Cf. Owens-Benniefield v. Nationstar Mortg. LLC*, 258 F. Supp. 3d 1300, 1308–10 (M.D. Fla. 2017) (citations omitted) (finding that assigning mortgage to another company, transferring the servicing rights to another servicer, and notifying customer of both events did not constitute debt collection activity).

In a prior order, the Court determined that the loss mitigation letter (2/10/2020), the motion to cancel the sale with the attached affidavit of PHH (2/25/2020), and the conduct before and after the sale of the property (3/3/2020), do not constitute debt collection activity.  Dkt. 34 at 7–17.  The Mathiesons assert, however, that the prior ruling on the February 10 letter and the February 25 motion with the affidavit "was without the benefit of additional facts which clearly show debt collection attempts."  Dkt. 43 at 5.  They further assert that the February 25 motion and the conduct leading up to the March 3 sale "in tandem with representations made" violate the FDCPA.  Dkt. 43 at 9.

The Court applies the least sophisticated consumer standard to analyze the additional alleged facts and determine whether the communication or conduct violates the FDCPA.  *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1193 (11th Cir. 2010).  When determining whether a communication conveys information "in connection with the collection of any debt," the Court looks to its specific language—does the communication merely inform or does it decisively demand payment and assess additional fees if payment is not tendered?  *Caceres v. McCalla Raymer, LLC*, 755 F.3d 1299, 1302–03 (11th Cir. 2014).  If the communication, even in part, conveys information to induce a debtor to pay, it falls within the scope of the FDCPA.  *Id*. at 1302.

The letters and notices, including the two new January 2020 letters (Dkt. 43-1), contain the debt collection disclaimer language.  All include the phrase that PHH is a debt collector who is "attempting to collect a debt."  Nevertheless, as will be explained, none of the written communications demand payment under the loan or threaten additional fees or charges if the borrower fails to make payment (or fails to do something else).  *Caceres*, 755 F.3d at 1302 (looking specifically to statements demanding payment and discussing additional fees if payment is not made).  As such, none of the written communications constitute debt collection activity.[19]

The January 14 letter, titled "early intervention – borrower assistance," lists options for the borrower—none of which demand payment, much less threaten additional fees if payment is not made.  Dkt. 43-1 at 1–5.  The assistance options include reinstatement by paying the past due amount, a refinance, a modification of the mortgage terms, a forbearance plan, a repayment plan, a sale of the property, a short sale, or a deed in lieu of foreclosure.[20]  Dkt. 43-1 at 1, 3.  No past, present, or future payment amounts appear in the assistance letter.  It informs the debtor that if

---

[19] *See also Farquharson*, 664 F. App'x at 802 (holding letter outlining loan modification program was not "in connection with the collection of any debt" because it did not demand or request payment); *Reese*, 678 F.3d at 1218 (holding letter demanding payment and threatening additional charges if payment not made was debt collection, even though it related to enforcement of a security interest).

[20] The loan documents gave the borrower the right to reinstate the loan at any time prior to the foreclosure sale.  Dkt. 35-1 at 25.

Case 8:20-cv-02728-WFJ-SPF   Document 49   Filed 09/08/21   Page 25 of 32 PageID 539

a foreclosure sale is scheduled, as it was, then the completed mortgage assistance

application must be received "at least seven (7) days in advance of the scheduled

sale date." Dkt. 43-1 at 2. None of the information in the January 14 letter is false,

nor would it be confusing or misleading to the least sophisticated consumer. *See*

*McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1020 (7th Cir. 2014) (holding

that confusion and misleading may be factual determinations, but dismissal is

appropriate when it is "apparent from a reading of the letter that not even a

significant fraction of the population would be misled by it").[21]

The January 29 letter that followed acknowledges receipt of the completed

mortgage assistance application. Dkt. 43-1 at 6. The contents explain that the

review for the options "may take up to 30 calendar days" from January 27. Dkt.

43-1 at 6. It informs that if further documentation is required, a notice will be sent

outlining the information needed with a reasonable deadline for submission and

that "foreclosure protection will be extended, provided the requested

documentation is received within the timeframe outlined in the applicable notice."

Dkt. 43-1 at 6. The letter advises that "no foreclosure sale will occur while we

evaluate the complete package and if the account is approved for an assistance

---

[21] *See also Buchanan v. Northland Grp., Inc.*, 776 F.3d 393, 397 (6th Cir. 2015) (holding that
although generally whether a letter is deceptive or misleading is a question of fact, courts may
dismiss a claim at the pleading stage if, after drawing all reasonable inferences from the
allegations in favor of the plaintiff, the complaint fails to allege a plausible theory of relief—
where even an unsophisticated consumer would not be confused).

option, the accountholder(s) must comply with all requirements of the approved

option."  Dkt. 43-1 at 7.  Like the January 14 letter, it does not demand payment or

threaten additional fees if payment is not made, nor does it state any monetary

amounts.[22]

     The second amended complaint alleges that Wells Fargo and PHH sent all

the communications "with the intent of receiving payment—by virtue of loss

mitigation/new loans or by a stipulated agreed upon price as part of a short sale (or

consideration for the purposes of a deed in lieu)."  Dkt. 35 ¶ 50.  The Mathiesons

argue that by offering reinstatement in the loss mitigation discussions post-

judgment (and while there was a conditional loss mitigation hold), Wells Fargo and

PHH requested payment of all past due amounts under the mortgage.  Dkt. 43 at

7–8.  They also argue that pursuing the short sale or deed in lieu options is

"furtherance of collection activity."  Dkt. 43 at 9.

     In support of this argument, the Mathiesons rely on the Third Circuit case of

*Allen v. LaSalle Bank*, *N.A.*, 629 F.3d 364 (3d Cir. 2011).  *Allen* is distinguishable,

however, because it involves different issues and different claims under the

FDCPA.  In *Allen*, a payoff quote to settle an arrearage for a mortgage debt was

---

[22] The February 10 loss mitigation letter outlines the additional documentation needed by the deadline of March 11, 2020.  Dkt. 35 ¶ 23; Dkt. 35-3 at 5.  As discussed in detail in a prior order, the February 10 letter does not attempt to collect a debt and is, therefore, not a covered communication.  Dkt. 34 at 7–12.

sent to the homeowner after the foreclosure suit was filed.  629 F.3d at 365.  After

the allegedly violative communications, Ms. Allen counterclaimed in the

foreclosure action.  *Id.* at 366.  The foreclosure action was dismissed, and Ms.

Allen then filed a class action in federal court, reasserting violations of the FDCPA

and state law.  *Id.*  The district court dismissed the complaint for failure to state a

claim under section 1692f(1).  *Id.*  The Third Circuit reversed and remanded to

allow the district court to determine whether the agreement or state law authorized

the amounts sought and "express[ed] no opinion as to whether Allen . . . alleged a

viable claim."  *Id*. at 369.

Unlike *Allen*, the instant case does not involve section 1692f(1), which

covers the collection or attempt to collect any amount not expressly authorized by

the agreement creating the debt or by law.  Rather, the second amended complaint

asserts a violation of 15 U.S.C. § 1692e(5).  Dkt. 35 ¶ 53.  Section 1692e, titled

"False or misleading representations," prohibits a debt collector from using "any

false, deceptive, or misleading representation or means in connection with the

collection of any debt."  Specifically, section 1692e(5) makes it a violation of the

statute for a debt collector to threaten "to take any action that cannot legally be

taken or that is not intended to be taken."  The Mathiesons articulate the violation

as follows:

> [Wells Fargo and PHH violated] 15 U.S.C. § 1692e(5) by threatening
> to take an action (the cancellation of the sale and avoid sale) that was

not intended to be taken by virtue of Defendants' failure to stop same by its willful noncompliance with a court order. Moreover, the indication to the Defendant [sic], that a loss mitigation hold existed (when it did not by virtue of the sale going forward) violated the FDCPA.

Dkt. 35 ¶ 53.[23]

The first sentence of section 1692e maintains the overarching requirement that the false "representation or means" be used "in connection with the collection of any debt."  Under subsection (5) of section 1692e, the communication or conduct must be threatened action "not intended to be taken."  In the second amended complaint, the phrase "not intended to be taken" refers to stopping or avoiding the sale of the property.

The Mathiesons argue that Wells Fargo and PHH crafted the February 25 motion to cancel sale in a manner to secure the denial and never intended to stop the sale on March 3.  Dkt. 43 at 10−11.  Defendants allegedly manifested their lack of intention through their "willful noncompliance" with the instructions in the foreclosure judgment by failing to correctly seek cancellation.  Dkt. 35 ¶ 53.  The purported noncompliance includes the Defendants' failure to set the motion for

---

[23] With respect to the FCCPA, the second amended complaint alleges that Wells Fargo violated section 559.72 by both "claiming a debt" and "threatening to collect a debt" when "such person knows that the debt is not legitimate and asserted the existence of some other legal right when such person knows that the right does not exist."  Dkt. 35 ¶¶ 44, 45.

hearing "and instead sen[ding] only a letter with proposed order."  Dkt. 35 ¶¶ 28, 53

Although the foreclosure judgment states that the motion "must be set for hearing," courts—not counsel—typically notice and set hearings, and hearings are not necessarily set at the parties' request.  None of the exhibits central to the claim substantiate that the motion was knowingly, improperly written to ensure its denial.  Moreover, inferring the underlying reasons for the denial of the motion would only be conjecture on the part of anyone other than the state court judge.  Likewise, Defendants' decision not to renew or appeal within the brief three-day period between the denial and the sale does not evidence that they never intended to stop the sale.  To the contrary, Defendants sought to cancel the sale as soon as they received the additional documents from the Mathiesons.[24]  The Court concludes that the alleged facts stretch well beyond the limits of section 1692e(5).

Finally, the Court examines the last sentence of paragraph 53 of the second amended complaint: that Defendants' indication to the Mathiesons that a "loss mitigation hold existed (when it did not by virtue of the sale going forward) violated the FDCPA."  The January 29 letter places a hold on the account based on the completed borrower's application.  Dkt. 35 ¶ 21.  The letter informs of the

---

[24] Filing a motion to cancel a sale is not threatened action; it is decisive action to stop the sale. The disposition of the motion rests solely with the state court.

review process, which may take up to 30 days and result in the sending of a notice to the borrower of any documents needed.  Dkt. 43-1 at 6.

The subsequent February 10 letter outlines the options, giving the borrower until March 11 to provide the documents.  Dkt. 35-3 at 1, 5.  The Mathiesons submitted some of the requested documents on February 25, which prompted Defendants to file the motion to cancel the sale.  Dkt. 35 ¶ 28.  That Defendants were unsuccessful in the state court in stopping the sale does not make the hold acknowledged on January 29 false or misleading.  At the time, the mortgage interest had already been foreclosed, but no deficiency could be sought before the sale.  Defendants did not pursue a deficiency after the sale.  On these allegations, placing a hold on an account and informing the borrower of that fact, particularly after the borrower submitted a mortgage assistance application, was not false or misleading, even to an unsophisticated consumer.[25]  Most importantly, the hold and subsequent unsuccessful attempt to stop the scheduled foreclosure sale are not connected with the collection of the underlying mortgage debt.[26]

---

[25] For the first time in the third version of the complaint, the Mathiesons add a conclusory paragraph in each count that Defendants "contacted a known represented party on or after August 19, 2020 after active knowledge of representation."  Dkt. 35 ¶¶ 46, 55.  The foreclosure judgment was filed on August 16, 2019, and this action was filed in November 2020.  None of the alleged violative debt collection conduct is alleged to have occurred after March 3, 2020.  In their response, the Mathiesons assert that a letter acknowledging a receipt of a notice of error was sent to them instead of their counsel.  Dkt. 43 at 22.  However, these facts are not alleged in the second amended complaint.

[26] The alleged actions occurred between the foreclosure judgment and the sale.  Although Defendants reserved the right to seek a deficiency in the complaint, they never sought one, nor

Having concluded the allegations are insufficient to establish PHH or Wells Fargo is a "debt collector" and the communications or conduct are false or misleading, the Court finds dismissal of this action appropriate.  The allegations, and all reasonable inferences therefrom, fail to allege a plausible claim—such that even an unsophisticated consumer would not be confused or misled by the written communications or conduct.  To the extent that the FCCPA claims may be viable, the Court declines to exercise supplemental jurisdiction, as strongly encouraged where federal claims are dismissed prior to trial.  *See* 28 U.S.C. § 1367(c)(3); *Farquharson,* 664 F. App'x at 798 (citing *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997)).  The dismissal of the FCCPA count is without prejudice to refiling in state court.  *See Ingram v. Sch. Bd. of Miami-Dade Cnty*., 167 F. App'x 107, 109 (11th Cir. 2006) (holding dismissal of state law claims is without prejudice where district court dismisses all claims over which it has original jurisdiction); 28 U.S.C. § 1367(d) (tolling statute of limitations on state claims).

It is therefore **ORDERED AND ADJUDGED** that the motion to dismiss (Dkt. 40) is granted.  Count II seeking relief under the FDCPA is dismissed with

---

could they before the sale.  *See* Dkt. 34 at 17 n.13 (discussing authorities concerning debt collection and mortgage deficiencies).

prejudice.  Count I seeking relief under the FCCPA is dismissed without prejudice.

The Clerk is directed to close the case.

   **DONE AND ORDERED** at Tampa, Florida, on September 8, 2021.

         _____

         **WILLIAM F. JUNG**

         **UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of record